UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

EDF Renewables Distributed Solutions, Inc.,        File No. 19-cv-1588 (ECT/BRT)

       Plaintiff,

v.                                **OPINION AND ORDER**

Morgan Southard and Dianne Southard d/b/a
Oxbow Sunworks, Oxbow Solar
Professionals, Inc.,

       Defendants.

---

Dean B. Thomson, Thomas C. Schram, Fabyanske, Westra, Hart & Thomson, PA, Minneapolis, MN, for Plaintiff.

Steven R. Little, SRL Law, PLLC, St. Paul, MN, for Defendants.

---

    This began as a straightforward commercial contract case. Plaintiff EDF Renewables Distributed Solutions, Inc., claims that Defendants Morgan and Dianne Southard, doing business as Oxbow Sunworks, failed to perform subcontract agreements related to solar-power construction projects and then improperly recorded mechanic's liens on the projects through a different entity, Oxbow Solar Professionals, Inc. Compl. ¶¶ 1–2 [ECF No. 1]. After EDF filed its complaint, it deposited a bond with the Court, and Defendants agreed to seek recovery on their liens from the bond rather than from the solar projects themselves. ECF Nos. 13, 15, 18. Defendants then filed counterclaims seeking to foreclose their liens, as well as for breach of contract, promissory estoppel, unjust enrichment, and quantum meruit. Am. Counterclaim [ECF No. 17].

A drawn-out discovery dispute eventually led Magistrate Judge Becky R. Thorson to order Defendants to produce documents that EDF had requested.   ECF No. 48. Magistrate Judge Thorson also ordered Defendants to pay EDF more than $19,000 in attorney fees as a sanction for their conduct in discovery.  *Id.*; ECF No. 60.  Defendants have not complied with either order or responded with any excuse for their noncompliance. EDF has moved to dismiss Defendants' counterclaims with prejudice and to release the bond that it previously deposited with the Court.   ECF No. 56.   Because the unique circumstances of this case make the last-resort sanction of dismissal appropriate, EDF's motion will be granted.

I

Beginning in the fall of 2018, EDF agreed to design and construct a "community solar garden portfolio" for a company that is not a party to this litigation.  Compl. ¶ 14.  To fulfill its obligations under this broader agreement, EDF entered into separate subcontract agreements with Defendants for "electrical and mechanical construction work" at seven different solar-power-generation project sites.  Compl. ¶ 16; Am. Answer ¶ 13.  According to EDF, Defendants failed to pay their subcontractors and suppliers and generally to complete the agreed-upon work.  Compl. ¶¶ 24–29.  After EDF allegedly brought these issues to Defendants' attention several times without resolution, it decided to assume the remaining work on the projects in April 2019.  Compl. ¶¶ 30–36.  About a week later,

Defendants filed and recorded mechanic's liens against each of the seven solar-generation projects.[1]  Compl. ¶ 39; Am. Answer ¶ 31.

EDF filed its complaint in June 2019, raising claims for breach of contract, a Minnesota statutory violation, and a judgment declaring Defendants' liens invalid.  Compl. ¶¶ 48–80.  Defendants filed an answer, ECF No. 9, and later an amended answer in which they asserted counterclaims for breach of contract, promissory estoppel, unjust enrichment, and quantum meruit, ECF No. 12.  Shortly thereafter, EDF agreed to file a bond worth $242,952.63 with the Clerk of Court.  ECF Nos. 13, 15, 18.  In exchange, Defendants agreed to entry of an order discharging and releasing its liens from the properties on which the solar projects were located and requiring them to assert foreclosure claims only against EDF's bond.  *Id.*  Defendants accordingly amended their pleadings to add these foreclosure claims.  ECF No. 17.

The case then proceeded into discovery, which is where the problems began.  On October 2, 2019, Magistrate Judge Thorson issued a Pre-Trial Scheduling Order under which the parties were to complete fact discovery by June 1, 2020.  ECF No. 20 at 3.  EDF served a request for production of documents on Defendants on October 23, which included requests for Defendants' "complete project file for the Projects," documents relied on by

---

[1]      The Parties dispute exactly who were parties to the subcontract agreements.  EDF says that it entered into the subcontracts with the Southards, who were doing business under the "commercial assumed name" of Oxbow Sunworks, and that it never had a contractual relationship with Oxbow Solar Professionals—the entity that filed the liens.  Pl.'s Mem. in Supp. at 2 n.1 [ECF No. 58]; Compl. ¶¶ 2, 39–41.  Defendants claim that Oxbow Solar Professionals was a party to the subcontracts but that the Southards themselves never were.  Am. Answer ¶ 13.  There is no need to resolve this dispute for purposes of the present motion, so Defendants will be referred to collectively.

any experts expected to testify, "cost estimates," payment records, and other financial information. ECF No. 54-11. Defendants responded to the request in writing on November 25 and indicated that the documents themselves would follow, but no documents arrived. ECF Nos. 54-12; 54-13. The resulting delay led the parties to request an extension of the deadline to amend pleadings, which Magistrate Judge Thorson granted. ECF Nos. 26, 28.

Defendants did eventually produce over 1,600 pages of documents on December 27, but there was a problem. The production contained many duplicates and irrelevant materials, and it omitted "financial [and] cost records, [and] records of Defendants' payments to their subcontractors and vendors" for the solar projects, which were necessary to evaluate Defendants' counterclaims. Decl. of Thomas C. Schram ¶¶ 17–19 [ECF No. 54]. On January 9, 2020, EDF's counsel asked Defendants' counsel if more documents were on the way, but he received no response for nearly two months. ECF No. 54-16; Pl.'s Mem. in Supp. at 4–5.

A response came when the Parties held a meeting on March 6. At the meeting, Defendants claimed that they possessed "numerous additional documents" and that an expert witness was using these documents to prepare a damages claim worth more than $1,000,000. Schram Decl. ¶ 24. Defendants indicated that they would produce the remaining documents "on a rolling basis" by April 10. ECF No. 54-21. Based on this proposal, the Parties' stipulated to extend the discovery deadline to August 3, and Magistrate Judge Thorson ordered the extension. ECF Nos. 31, 32.

April 10 came and went with no more document productions, prompting EDF to seek the Court's intervention. ECF No. 54-25. At a status conference on May 6,

Defendants' new counsel[2] blamed the delay on a dispute with a third party that had allegedly gained control of the records in question. Schram Decl. ¶ 32. On May 18, Defendants told EDF that they had made no progress and had "nothing more to produce." ECF No. 54-28. But two days later, at another status conference before Magistrate Judge Thorson, Defendants reported that they now had the records "and would produce them in the immediate future." Schram Decl. ¶ 33. If Defendants did not follow through on this promise, Magistrate Judge Thorson warned at this second conference, they would face adverse consequences. *Id.*

When EDF had received no additional documents by June 3, it filed a motion to compel and for sanctions. ECF No. 39. The next day, June 4, Defendants produced nearly 1,200 more pages, but this production included only four new documents (the rest were duplicates of previously produced records), and Defendants once again omitted the "financial, cost, and payment records" that EDF sought. Schram Decl. ¶ 36. This was the last that anyone has heard from Defendants in this case.

In the meantime, EDF's motion to compel remained pending, and Defendants filed no response, despite an explicit invitation to do so.[3] ECF Nos. 45, 47. On June 26, Magistrate Judge Thorson granted the motion to compel and ordered Defendants to produce all responsive documents, along with a "detailed privilege log" for withheld

---

[2]     Attorney Steven R. Little filed his appearance as Defendants' substitute counsel on March 27, 2020. ECF No. 34.

[3]     Defendants never argued to the Court—then or now—that their June 4 production was fully responsive to EDF's requests.

5

documents, by July 15.  ECF No. 48.  In a later order, Magistrate Judge Thorson ordered Defendants to pay over $19,000 in attorney fees and costs to EDF as a sanction.  ECF No. 60.

On August 3, after Magistrate Judge Thorson's deadline had passed without a response from Defendants, EDF filed the present motion to dismiss Defendants' counterclaims with prejudice and to release its bond.  ECF No. 56.  Defendants have filed no response to the motion.  A hearing on the motion was held on September 21, but despite a courtesy call from the Court, Defendants did not appear for it.  ECF No. 65.  A second hearing was scheduled for September 25, and Defendants were ordered to show cause at that hearing why EDF's motion should not be granted.  ECF No. 63.  Once again, Defendants did not appear or provide an excuse for their absence.  ECF No. 68.

II

The law gives courts a range of tools to punish and deter litigation misconduct.  As relevant here, Federal Rule of Civil Procedure 37(b)(2)—the asserted basis for EDF's motion—provides a non-exclusive list of sanctions that become available when a party "fails to obey an order to provide or permit discovery," and the list includes "dismissing the action or proceeding in whole or in part."  *Id.* 37(b)(2)(A)(v).

The Eighth Circuit has made clear that dismissal is a "drastic" discovery sanction. *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1020 (8th Cir. 1999).  It is "available only if there is '(1) an order compelling discovery, (2) a willful violation of the order, and (3) prejudice'" to the opposing party.  *Comstock v. UPS Ground Freight, Inc.*, 775 F.3d 990, 992 (8th Cir. 2014) (quoting *Bergstrom v. Frascone*, 744 F.3d 571, 576 (8th Cir. 2014)).

6

And even then, courts should consider "whether a sanction less extreme than dismissal would suffice," unless the noncompliance was "deliberate or in bad faith."[4]  *Bergstrom*, 744 F.3d at 576 (quoting *Avionic Co. v. Gen. Dynamics Corp.*, 957 F.2d 555, 558 (8th Cir. 1992)).

The first step of the analysis is straightforward.  Magistrate Judge Thorson issued an order compelling production of documents, which brings this case within the ambit of Rule 37(b)(2).  But there are at least three other orders relevant to the decision on EDF's motion.  Magistrate Judge Thorson's most recent pretrial scheduling order set a discovery deadline of August 3, which has now passed.  ECF No. 32.  She also ordered Defendants to pay fees and costs to EDF as a discovery sanction on August 3.  ECF No. 60.  And after Defendants did not file a response to EDF's motion to dismiss, they were specifically ordered to appear at a hearing and show cause why the motion should not be granted.  ECF No. 63.

Defendants have violated each of these orders.  First, Defendants have not produced any additional documents or a privilege log in response to Magistrate Judge Thorson's

---

[4]     As noted above, Defendants have not responded to EDF's motion in any way.  The Local Rules authorize a court to take "appropriate" action when a party "fails to timely file and serve a memorandum of law," L.R. 7.1(g), and one might wonder whether it is appropriate to interpret Defendants' failure to respond as acquiescence to the motion.  Given the Eighth Circuit's cautious approach to dispositive sanctions, however, EDF's motion will not be granted solely based on Defendants' silence.  *See Doud v. Durham Sch. Serv., L.P.*, No. 14-cv-3403 (PAM/HB), 2017 WL 963145, at *2 (D. Minn. Mar. 9, 2017) (considering the merits of a motion to dismiss under similar circumstances).  Their silence nevertheless remains relevant to the questions of whether and what sanctions may be appropriate.

order compelling discovery, nor have they sought an extension or offered an excuse for their noncompliance.  Second, Defendants have not met or sought to extend the discovery deadline in the amended pretrial scheduling order.  Third, it has been nearly two months since Magistrate Judge Thorson ordered Defendants to pay fees and costs, and they have not done so.  Fourth, the Defendants did not appear for either hearing on EDF's motion to dismiss, ignoring the order to show cause.

Defendants' disregard for Magistrate Judge Thorson's order compelling discovery is at least willful.  For a violation to be "willful," the offending party need only have "acted intentionally as opposed to accidentally or involuntarily." *Hunt v. City of Minneapolis*, 203 F.3d 524, 527 (8th Cir. 2000) (quoting *Rodgers v. Univ. of Mo.*, 135 F.3d 1216, 1219 (8th Cir. 1998)) (presenting willfulness as a lower standard than bad faith).

The record shows a pattern of voluntary delay and disengagement on Defendants' part.  *See Hutchins v. A.G. Edwards & Sons, Inc.*, 116 F.3d 1256, 1260 (8th Cir. 1997) (treating a party's "persistent failure to cooperate and their disregard of" court orders as evidence of willfulness in the context of a dismissal for failure to prosecute).  They have repeatedly promised that documents were on the way and then failed to follow through. And Defendants' explanations for these failures have shifted.  They asserted in March that they had numerous additional responsive documents, reported in early May that a third party possessed the documents, and then switched course again two weeks later.  Of course, this is not to say that Defendants were lying in each instance—given Defendants' failure to appear and answer questions, it is impossible to tell—but the inconsistency is a real problem.

8

Even more of a problem are all the times that Defendants have said nothing at all. More than once, they have ignored EDF's counsel for months at a time. They did not respond to EDF's motion to compel, even after Magistrate Judge Thorson's warning that noncompliance would have adverse consequences. *See Rodgers*, 135 F.3d at 1218, 1220–21 (upholding a finding of willfulness where the court had warned the party of potential consequences of disobedience). After Defendants failed to appear at the initial hearing on EDF's motion to dismiss, the Court tried, without success, to reach Defendants' counsel directly, scheduled a second hearing, and issued an order to show cause. Defendants remained silent.[5] This pattern supports a strong inference that their noncompliance is no accident.[6] *See Hutchins*, 116 F.3d at 1260.

Nor is there any question that EDF has suffered prejudice. *See Comstock*, 775 F.3d at 992. When a party fails to comply with a discovery order, it is generally enough that the noncompliance "impairs an opponent's ability to determine the factual merits of [the] party's claim." *In re O'Brien*, 351 F.3d 832, 839 (8th Cir. 2003); *cf. Sentis Grp., Inc. v. Shell Oil Co.*, 559 F.3d 888, 903 (8th Cir. 2009) (suggesting that there would be no

---

[5]    Public records suggest that Defendants' counsel has continued to actively represent clients in state court even after Magistrate Judge Thorson's order compelling discovery. *See* Register of Actions, *Avenger Home Solutions, Inc. v. City of Lino Lakes*, No. 02-cv-20-2887 (Minn. Dist. Ct.), accessed via http://pa.courts.state.mn.us/default.aspx.

[6]    It does not matter whether Defendants' counsel or Defendants themselves are primarily to blame for this pattern, because "a party is responsible for the actions and conduct of [its] counsel[,] and . . . under appropriate circumstances, dismissal . . . may be entered against a party as a result of counsel's actions." *United States v. Eleven Million Seventy-One Thousand One Hundred and Eighty-Eight Dollars and Sixty-Four Cents in U.S. Currency*, 825 F.3d 365, 370 (8th Cir. 2016) (citation omitted).

prejudice if "everything that might be produced ha[d] been produced"). The financial information that EDF seeks—and that Defendants have not produced—goes to the core of Defendants' counterclaims. Indeed, Defendants asserted at one point that the unproduced documents would form the basis of their damages claim. Schram Decl. ¶ 24. Without this basic information, EDF has little hope of preparing a defense.

The prejudice in this case also goes beyond mere litigation disadvantage. The unreasonable delay caused by Defendants' conduct has already led to a needless waste of time and effort on EDF's part. *Cf.* 28 U.S.C. § 1927 (authorizing courts to award fees and costs against attorneys responsible for this type of "vexatious[]" behavior). And according to EDF, further delay will cause it to incur additional costs in maintaining its bond and to suffer "impair[ed] . . . bonding capacity and credit." Pl.'s Mem. at 15. Under these circumstances, holding Defendants accountable is the responsible thing to do, and dismissal is an available sanction.

The question, then, is whether dismissal is the right sanction. The law does not require the "least onerous sanction available," *Chrysler Corp.*, 186 F.3d at 1022, but it does reserve dismissal for the most "dilatory and contumacious conduct," *Keefer v. Provident Life & Acc. Ins. Co.*, 238 F.3d 937, 941 (8th Cir. 2000). Courts should "weigh [the] need to advance [a] burdened docket against the consequence of irrevocably extinguishing [a] litigant's claim[.]" *Hutchins*, 116 F.3d at 1260. If a lesser sanction could effectively punish the violation and deter future violations, *see Chrysler Corp.*, 186 F.3d at 1022, then it is worth considering.

The lesser sanctions that come to mind here would be either ineffective, impractical, or counterproductive. First, by ignoring Magistrate Judge Thorson's order to pay attorney fees and costs to EDF, Defendants have already shown that a monetary sanction—even a substantial one—will have little effect. Second, EDF is not trying to ascertain a single fact that could simply be "taken as established," Fed. R. Civ. P. 37(b)(2)(A)(i); it is trying to understand the basic factual underpinnings of Defendants' counterclaims. For this reason, there are no "designated matters in evidence" that Defendants could be kept from introducing, *id.* 37(b)(2)(A)(ii), and prohibiting Defendants from supporting their counterclaims, *see id.*, would be functionally the same as dismissing the claims entirely. Finally, "staying further proceedings until the order is obeyed," *id.* 37(b)(2)(A)(iv), would only delay the resolution of EDF's claims, causing further prejudice and effectively rewarding Defendants' behavior.

Under these unique circumstances, it is appropriate to dismiss Defendants' counterclaims with prejudice. Defendants have ignored multiple court orders and repeatedly failed to produce information "critical to" their claims. *Comstock*, 775 F.3d at 992. For nearly four months now, Defendants have disengaged from the litigation entirely, calling into question whether they even intend to continue prosecuting their counterclaims. *Cf. Hairston v. Alert Safety Light Prods., Inc.*, 307 F.3d 717, 719 (8th Cir. 2002) (holding that plaintiffs' failure to produce witnesses for a deposition or to respond to a show-cause order did not warrant dismissal where it appeared that plaintiffs were working behind the scenes to resolve the discovery dispute). This conduct shows a degree of disrespect that only a dispositive sanction will remedy.

One final word on dismissal. EDF specifically invoked Rule 37(b)(2) as the basis for its motion, and this opinion has accordingly focused on that rule. It is worth observing, however, that other sources of authority support dismissal here. A court may dismiss a claim if a party "fails to prosecute or to comply with . . . a court order." Fed. R. Civ. P. 41(b); *see id.* 41(c) (explaining that Rule 41 applies to the dismissal of counterclaims). And dismissal is within a court's "inherent power" to "fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991). As should be clear by now, Defendants' sanctionable behavior stretches beyond a single discovery order, blurring the lines between discovery misconduct, a failure to obey other court orders, and a more general abuse of the judicial process. To the extent Rule 37(b)(2) alone is not "up to the task" of addressing these problems, *Chambers*, 501 U.S. at 50, Rule 41 and inherent power provide equally sufficient bases for dismissal in this case.

EDF's bond, currently held by the Clerk of Court, will be released. EDF deposited the bond in order to give Defendants' "substitute *res*" against which to attempt recovery on their liens. ECF No. 15 ¶ 2. Because Defendants' counterclaims seeking to foreclose those liens will be dismissed, the bond no longer serves a purpose.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED THAT:**

1.    Plaintiff's Motion to Dismiss Counterclaims [ECF No. 56] is **GRANTED**.

2.    Defendants' Amended Counterclaims [ECF No. 17] are **DISMISSED WITH PREJUDICE**.

3.      The bond executed by EDF, as principal, and Westchester Fire Insurance

        Company, as surety, and previously deposited with the Clerk of Court [ECF

        No. 18] is **RELEASED**.


Dated:  October 6, 2020                    s/ Eric C. Tostrud
                                           Eric C. Tostrud
                                           United States District Court